## Toney *et al.* v. Wilson.

*Motion by Sheriff for Instructions as to Application of Money on Executions.*

*Liens of executions.* — Since the adoption of the Code of 1852 (Rev. Code, § 1873), a junior judgment creditor, who has kept his judgment alive by the regular issue of executions from term to term, is entitled to priority over senior judgment creditors who have suffered an entire term to elapse without the issue of an execution, although they may have executions in the hands of the sheriff when a sale is made under the junior judgment.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN ELLIOTT.

In this case, James H. Taylor, the sheriff of said county,

made application to the circuit court for instructions how to apply certain moneys in his hands, arising from the sale of property under sundry executions against C. V. Sayre and others. The sale was made on the 10th day of June, 1871, and the proceeds of sale amounted to $950. At the time of said sale, there were in the sheriff's hands the following executions against the defendants: one in favor of S. H. Toney, which was issued on the 3d January, 1871, and came to the hands of the sheriff on the 5th June, 1871; two in favor of George R. Curtis, which were issued on the 2d May, 1871, and came to the hands of the sheriff on the 18th May; and one in favor of Archelaus Wilson, which was issued on the 28th April, 1871, and was received on the 8th May, 1871. Wilson's judgment was rendered on the 5th April, 1870, by the circuit court of Autauga county, and executions on it were regularly issued from term to term. Toney's judgment was rendered on the 18th July, 1867, by the circuit court of Montgomery; but it was superseded by the defendant, and carried to the supreme court by appeal, where it was affirmed, with damages, on the 11th June, 1868; and more than an entire term elapsed between the issue of the *alias* and *pluries* executions. The judgments in favor of Curtis were rendered on the 15th March, 1869, and executions on them were regularly issued within a year after their rendition; but more than an entire term had elapsed when the last execution was issued and put in the hands of the sheriff. On these facts, the circuit court directed the money to be applied to the satisfaction of Wilson's execution; to which ruling and judgment the said Toney and Curtis each excepted, and which they now assign as error.

FITZPATRICK & WILLIAMSON, for appellant Toney.

MORGAN, BRAGG & THORINGTON, for appellant Curtis.

ELMORE & GUNTER, for appellee Wilson.

BRICKELL, J. — Prior to the Code of 1852, executions issuing from a court of record were liens on the goods and chattels of the defendants, from the day of delivery to the proper officer to be executed. Judgments were a lien on the lands of defendants from the day of their rendition. The lien of an execution, and of a judgment, was lost, as against a junior judgment creditor, if there was the lapse of an entire term between the issue of the original and an *alias* execution. If, however, the execution of a junior judgment creditor was levied, and before a sale under it the senior judgment creditor had execution issued and placed in the hands of the sheriff, the

[Toney v. Wilson.]

lien revived, and would prevail over that of the junior judgment creditor. *Wood* v. *Gary*, 5 Ala. 43 ; *De Vendell* v. *Doe, ex dem. Hamilton,* 27 Ala. 156. Thus, a slothful was often rewarded by the diligence of a vigilant creditor. The Code of 1852 declared the order of liens of different judgments and executions, and provides, " that if an entire term elapse between the return of an execution and the suing out of an *alias,* the lien created by the delivery of the first execution to the sheriff is lost, but, if an *alias* be sued out before the lapse of an entire term, and delivered to the sheriff, before the sale of property under a junior execution, the lien created by the delivery of the first execution must be preferred." Comparing this statute with the law existing at its passage, it can but be construed as intending to operate, and as operating, an abrogation of the preëxisting rule, that the lien of a senior judgment creditor could, although an entire term had elapsed without the issue of an *alias* execution, be revived, and preferred to the lien of a junior judgment creditor, if an *alias* was issued, and was in the hands of the sheriff, before a sale under the junior judgment. This provision of the Code of 1852 has not been changed, and is now section 2873 of the Revised Code of 1867. Judgments were not liens under the Code of 1852. Executions only had liens attached to them, from the day of delivery to the officer. If liens had been subsequently attached to judgments, in the absence of contrary provisions, the order of such liens would have been regulated by the statute to which we have referred.

The appellants in this case were senior judgment creditors to the appellee. If they had kept alive their judgments, by the regular issue of execution, they would have been entitled to priority over the appellee. This they failed to do, and thereby lost the priority arising from the seniority of their judgments. The appellee, without the lapse of a term, caused executions to issue on his judgment, and to be delivered to the sheriff. This gave him a priority, of which the appellants could not deprive him by the delivery of an *alias* to the sheriff before a sale under his judgment. Such was the opinion of the circuit court, and its judgment is affirmed.